IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

JESSIE ELERSON, JR.                                                              PLAINTIFF

v.                                        NO.  1:06-1037

SHERIFF KEN JONES;                                                            DEFENDANTS
DARRYL EASTER, Jail Administrator;
JERRY THOMAS, Deputy Sheriff; and JOSH
NEWTON, Deputy Sheriff

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Jessie Elerson (Plaintiff) filed this  pro se civil rights action under 42 U.S.C. § 1983 on April

13, 2006.  (Doc. 1).  Plaintiff's complaint was filed *in forma pauperis* (IFP) and certified to proceed

on May 9, 2006.  The named Defendants were properly served and an answer was filed on May 31,

2006.  (Doc. 6).  The Defendants filed a Motion for Summary Judgment on September 28, 2006

(Doc. 16) which is the issue before this Court on referral from the District Court.

I. **Background**

Plaintiff alleges that on January 15, 2006[1], Martin Luther King Jr.'s Birthday, he and the

other inmates of the Union County Criminal Justice Facility went nineteen hours without a meal

being served.  (Doc. 1).  Plaintiff states the inmates were then served two sandwiches and chips.  In

protest, the whole pod sent the meal trays back and one inmate set the trash on fire.  (Doc. 1).

Plaintiff and the other inmates were moved to the recreation room due to the smoke caused by the

fire.  (Doc. 1) .  Plaintiff states he asked for medical attention and some food because he could not

breathe due to smoke inhalation.  (Doc. 1).

Plaintiff further alleges that after he asked for medical attention, non-party Officer Burton

---

[1]  In his response to the Defendant's Motion for Summary Judgment (Doc. 20), Plaintiff states the incident
occurred on January 16, 2006. (Doc. 20, paragraph 25).

and Defendant Newton told him to "shut-up" and that these officers "shocked him" with a Taser. (Doc. 20).  In his original Complaint, Plaintiff states it was Defendant Newton who "hit me with a stun gun."  (Doc. 1).   The Defendants agree Plaintiff was given a shock from a non-lethal X-26 Taser. (Doc. 17)   Plaintiff claims this occurred after he walked away from requesting medical assistance. (Doc. 20)  Defendants state Plaintiff was agitated and began to curse and yell about the food he had been served for lunch. (Doc. 17).  Defendants characterize the situation as one that could have possibly caused a riot. (Doc. 17).  Defendants further characterize Plaintiff as aggressive, combative, and verbally abusive, as well as failing to comply with the officers' orders.  (Doc. 17). Plaintiff states he never cursed or yelled, and that he followed all orders.  (Doc. 20).

Immediately following the incident, Pro-Med ambulance service was called to do a complete check of Plaintiff's vital signs.  (Doc. 20, Doc. 17).  Plaintiff states that as soon as he regained consciousness, Defendant Thomas told the paramedics Plaintiff was fine and put Plaintiff back in a cell. (Doc. 1).  Plaintiff further alleges the paramedics wanted to take him to the hospital due to a "problem with my heart and my blood pressure was too high."  (Doc. 20).   Plaintiff states Defendant Jones would not allow Plaintiff go to the hospital for further treatment because there were no funds for Plaintiff to go to the medical center.  (Doc. 20).

Plaintiff states that on January 17, 2006, January 26, 2006, and February 14, 2006, he put in a complaint about his back and side due to the Taser, but never received an answer. (Doc. 20). Plaintiff does  indicate that on these dates, as well as January 19, 2006, he went to see the nurse and doctor and was told a CAT scan would be necessary, but the county did not have the funds for Plaintiff to get one.  (Doc. 20).

In an additional allegation of harm, Plaintiff states he had medication he needed to take with

-2-

food.  (Doc. 20).  The lack of food for nineteen hours caused him to be sick when he took the medication on an empty stomach. (Doc. 20).

Defendants state it is the policy of the Union County Sheriff's Department to serve two meals on weekends and holidays with double portions to make up for the lack of a third meal.  (Doc. 17). Plaintiff claims double portions are not served at these times.  (Doc. 20).  Plaintiff further claims a custom and policy of denying inmates proper meals as inmates are only served sandwiches with a small bag of chips and water during the weekdays.  (Doc. 20).  Plaintiff also claims there is a custom or policy of denying inmates medical treatment as medical treatment is "non existing" except for Thursdays.  (Doc. 20).

## II.  Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.  Official Capacity Claims

Plaintiff has sued Defendants in their individual and official capacities.  Plaintiff's official capacity claims are tantamount to suing Union County.  Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

-3-

official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on respondeat superior, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. In his response to the Motion for Summary Judgment (Doc. 20), Plaintiff states there was a custom or policy leading to inadequate conditions of confinement because the facility served sandwiches, chips, and water on weekdays. He asserts this does not afford the inmates proper nutrition. Plaintiff also states there is a custom or policy of denying inmates medical treatment as it is only available on Thursday.

Plaintiff has failed to state a custom or policy for either his conditions of confinement claim or his medical treatment claim. Plaintiff admits that inmates are served meals on weekdays. Although he asserts these meals are not nutritionally adequate, Plaintiff has not provided any basis to substantiate these claims.

Additionally, Plaintiff alleges medical treatment is available only on Thursdays. However, given the facts as Plaintiff has pled them, he received medical treatment on January 15 or 16, 2006, – a Monday or Tuesday. Plaintiff also states he saw Nurse Debbie and Doctor Seale on January 17, 2006 and February 14, 2006 (Doc. 20, para. 25). These dates correspond to Tuesdays. Medical treatment is clearly available to inmates on days other than Thursdays. Plaintiff has not demonstrated

a custom or policy of denying medical treatment when needed by Plaintiff.  Accordingly, Summary Judgment is granted as to Plaintiff's official capacity claims.

**B.  Excessive Force Claims**

There is no dispute Plaintiff was a pre-trial detainee at the time of the incident.  Although Plaintiff was a prisoner in the Arkansas Department of Corrections, he was an inmate at the Union County Jail awaiting trial on additional criminal charges.  In *Graham v. Connor*, 490 U.S. 386, 395 (1989) the Court noted that the Due Process Clause of the Fourteenth Amendment protects "a pretrial detainee from the use of excessive force that amounts to punishment."  The Due Process Clause inquiry includes determinations of whether officers acted in good faith or maliciously and sadistically, and whether force used exceeded force needed.  *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir.1986).

In this case, there is clearly a genuine issue of material fact as to whether defendants used excessive force.  Under Defendants' recounting of the incident, force may have been necessary to subdue a potential riot situation and a uncooperative and abusive inmate.  However, given the facts as this Court must view them, in the light most favorable to Plaintiff, Defendants used a Taser on Plaintiff after he walked away from making a medical request.  Due to these issues of fact, there is also a question as to whether qualified immunity would apply.  Summary judgment should be denied on this point.

**C.  Denial of Medical Care**

As Plaintiff was a pretrial detainee, his denial of medical care claims are more properly analyzed under the due process clause of the Fourteenth Amendment than the Eighth.  "The Due Process Clause . . .  require[s] the responsible government . . .agency to provide medical care to

persons . . .who have been wounded while being apprehended by the police . . .." *Price v. County of San Diego,* 990 F.Supp. 1230, 1242 (S.D.Cal. 1998) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).  *See also, Hartsfield v. Colburn*, 371 F.3d 454, 456-457 (8th Cir. 2004).

"The standard to be applied in assessing a pretrial detainee's claim of due process violations . . . is not entirely clear."  *Spencer v. Knapheide Truck Equipment Co.*, 183 F.3d 902, 906 (8th Cir.1999).  Nevertheless, "[t]he Supreme Court has held that pretrial detainees are entitled under the Fourteenth Amendment to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." *Id.* (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).

In the absence of a clearly binding standard, the Eighth Circuit in analyzing inadequate medical care claims brought by pretrial detainees has applied the Eighth Amendment's deliberate indifference standard.  *See e.g., Hartsfield*, 371 F.3d at 456-457; *Spencer*, 183 F.3d at 905-06; *Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir.1994)(analyzing a pretrial detainee's claim of inadequate medical care under the deliberate indifference standard).  "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials (arresting officers) actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen* 205 F.3d 1094, 1096 (8th Cir.2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir.1997)).  Additionally, " '[t]he prisoner must show more than negligence,

more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (quoting *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)).  *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir.2000) ("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious.*" Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir.1997) (per curiam) (internal quotation and citation omitted).  Deliberate indifference can be manifested by an intentional denial of or delay in providing access to medical care.  *Charron v. Medium Sec. Inst.,* 730 F. Supp. 987, 996 (E.D. Mo.1989).

In the present case the Plaintiff contends that he notified jail personnel that he was having trouble breathing before the Taser was used on him.  Plaintiff also contends that after being stunned by the Taser, he had numbness on his side and back, and submitted complaints/grievances of the same.  Plaintiff contends he never received an answer regarding these complaints.  However, Plaintiff also indicates on the same days he complained, he saw Nurse Debbie and Doctor Seale.  (See Doc. 20, para 24 and 25).

It appears Plaintiff's main failure to medicate claim comes from his allegations the paramedics wanted him to go to the hospital after checking his vial signs from the Taser incident.  Plaintiff alleges that Defendant Jones and Defendant Thomas did not allow him to go to the hospital.  Plaintiff also

appears to allege a failure to medicate claim by Defendants not taking him to get a CAT scan, although it was suggested by Nurse Debbie and Doctor Seale.

Plaintiff has not demonstrated how he was injured by the failure to get a CAT scan, or how this suggestion by the nurse and doctor was a serious medical need.  Summary judgment should be granted on this point.  However, viewing the facts in the light most favorable to Plaintiff, the Court can not say there are no genuine issues of material fact regarding whether Defendant Jones and Thomas were deliberately indifferent to Plaintiff's serious medical needs after the Taser incident. Summary judgment should  be denied on this point.

**D.  Conditions of Confinement**

Plaintiff also claims the conditions of Confinement violated his federal constitutional rights as he was not served a meal for nineteen hours.  Plaintiff does not claim to be malnourished, but does claim that he became sick due to taking medicine on an empty stomach.

Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987).  "These protections specifically include the Eighth Amendment's prohibition against cruel and unusual punishment."  *Talib,* 138 F.3d at 213. "Punishment rises to the level of cruel and unusual only if it involves an 'unnecessary and wanton infliction of pain.'" *Id.* at 214 (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (internal quotations omitted)).  To establish an Eighth Amendment claim, the prisoner must demonstrate, *inter alia,* an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need.  *Harper,* 174 F.3d at 720.

The Eighth Amendment requires that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.' "  *Green v. Ferrell,* 801 F.2d 765, 770 (5th Cir.1986)

-8-

(quoting *Smith v. Sullivan,* 553 F.2d 373, 380 (5th Cir.1977)) (footnote omitted); *see also Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir.1996) (*per curiam*) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)) (internal quotations omitted). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." *Id.* Even on a regular, permanent basis, two meals a day may be adequate. *Green,* 801 F.2d at 770-71; *see also Roddy v. Corbitt Nesbitt*, 242 F.3d 376 (8th Cir. 2000).

In this case, Plaintiff's claims do not come close to the "minimal civilized measure of life's necessities" standard. Plaintiff has no allegations of weight loss or other physical harms from the food service schedule at the Union County Jail. Plaintiff's only complaint is of being "sick" from taking medication on an empty stomach. However, Plaintiff did not file any medical grievance or seek a doctor's care from becoming "sick." Accordingly, Summary Judgment should be granted on this issue.

### III.  CONCLUSION

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 16) be GRANTED in part and DENIED in part. I recommend Summary Judgment be granted on Plaintiff's official capacity claims and Plaintiff's conditions of confinement claims. I recommend summary judgment be denied on Plaintiff's excessive force claims against Defendant Newton from the use of the Taser and his claims of deliberate indifference to medical needs against defendants Thomas and Jones following the Taser incident.

**The parties have ten days from receipt of the report and recommendation in which to**

file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections

may result in waiver of the right to appeal questions of fact.  The parties are reminded that

objections must be both timely and specific to trigger de novo review by the district court.

**IT IS SO ORDERED** this **11th day of July, 2007.**

/s/ Barry A. Bryant
HON. BARRY A.  BRYANT
UNITED STATES MAGISTRATE JUDGE